## COMMONWEALTH vs. BERT M. MOLINO.

Middlesex. September 10, 1991. - November 4, 1991.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Assistance of counsel. *Practice, Criminal*, Assistance of counsel, Defendant pro se, Sentence.

At a criminal trial, where the defendant was permitted to represent himself with the aid of standby counsel appointed to assist him, the judge acted within his discretion in limiting the role of standby counsel merely to responding to the defendant's requests for advice, and this restriction on standby counsel's participation in the trial did not violate the defendant's Federal constitutional rights to have the assistance of counsel or to represent himself. [152-155]

The record of a criminal trial provided no support to the defendant's contention that his sentence, which exceeded the Commonwealth's recommendation, was motivated either by the judge's bias or by an intention to punish the defendant for contempt committed during the trial. [155-156]

INDICTMENT found and returned in the Superior Court Department on March 22, 1988.

The case was tried before *James D. McDaniel, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David Duncan* for the defendant.

*William F. Bloomer*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. Indicted for trafficking in cocaine (G. L. c. 94C, § 32E [1988 ed.]) and for assault and battery on a police officer (G. L. c. 265, § 13D [1990 ed.]), the defendant, Bert M. Molino, was convicted by a Superior Court jury on both indictments. He appeals from his conviction of traffick-

ing in cocaine.[1] We transferred the case to this court on our own motion. The defendant argues that the trial judge violated his constitutional rights to due process and a fair trial by excessively limiting the role of standby counsel. He also contends that the judge based the sentence on impermissible considerations. We affirm.

1. *Procedural history.* The defendant was indicted on March 22, 1988, for trafficking in cocaine and assault and battery on a police officer. He chose to represent himself at trial without counsel. The judge allowed the defendant to proceed pro se but appointed standby counsel to assist him. See S.J.C. Rule 3:10, § 5, as appearing in 397 Mass. 1217 (1986).

The judge imposed strict limitations on the role of standby counsel during trial. Counsel could only respond to requests for advice made by the defendant; he could not offer any unsolicited advice. Our review of the record shows, for example, that standby counsel was not allowed to prompt the defendant to object during the Commonwealth's questioning of witnesses, to question witnesses, to draft motions or pleadings, or to talk at sidebar conference (unless he was responding to the defendant's question). The judge repeatedly admonished standby counsel to remain within these boundaries.[2] The

---

[1] Pursuant to the statutory minimum and maximum limits, the judge sentenced the defendant to a term of from twelve to fifteen years at the Massachusetts Correctional Institution at Cedar Junction. The verdict of guilty on the assault and battery on a police officer was placed on file with the defendant's consent; hence it is not before us on this appeal. See *Du-Pont* v. *Superior Court*, 401 Mass. 122, 123 (1987).

[2] There is no claim that the defendant was not fully apprised of his rights to have counsel or to proceed pro se; nor is it claimed that the judge failed fully to advise the defendant of the limited role of standby counsel from the outset, as well as during the trial. A sampling of the colloquies in the transcript shows the following:

THE JUDGE: "Yes. Before we go any further, I believe I will go through this colloquy as to whether or not you want him to represent — do you understand what it means to represent yourself?"

THE DEFENDANT: "Yes."

" . . .

THE JUDGE: "That is all he [standby counsel] is available for, to advise you. You can get all the advice in the world, he is not going to ask any

judge did permit the defendant to submit at least two mo-

---

questions of any witness, he doesn't necessarily draft any motions or any-
thing for you, that is entirely up to you. You may get information from
him, draft your own motions if you want to. In other words, the law is on
stand-by counsel that he is to be seen and not heard. Do you know why
that is so, do you know why?"

THE DEFENDANT: "Because I am representing myself."

THE JUDGE: "Yes. He might appear in all the stages, you are at the
helm of your ship and not [standby counsel]."

". . .

THE JUDGE: "[Standby counsel], you are to be seen and not heard, that
goes for any motion you drafted, because it looks to me like you are repre-
senting this defendant and he is not truly representing himself."

STANDBY COUNSEL: "I have never acted as stand-by counsel in a case
before, and frankly I am not familiar with the restrictions. [The defend-
ant], in the cell block, asked me, told me he was going to make a motion
under [Mass. R. Crim. P. 36, 378 Mass. 909 (1978)] and asked me to
write something down on paper to get the motion before the Court.

"In addition, he asked me to prepare a couple of other motions, which I
have done while I was seated here and I am just handing them to him."

THE JUDGE: "Any motions he has, you give to him now, because the law
is clear that stand-by counsel does nothing more than advise, is there and
available and ready to advise him. He has to appear to be representing
himself entirely, and that goes for any motions that are filed and any dis-
cussions he may want to have with the Court.

"That is what it means for him to go pro se, just as if he were his own
lawyer. That is what he wants to be and that is what he is going to be."

STANDBY COUNSEL: "I assume Your Honor means he can stop and con-
sult with counsel, stand-by counsel at various times?"

THE JUDGE: "Yes."

STANDBY COUNSEL: "And I can advise him and ask him to take certain
actions?"

THE JUDGE: "No, you can't do anything except advise him. You may
not even talk to me."

STANDBY COUNSEL: "Excuse me, that was not my understanding. For
the record, I object."

THE JUDGE: "I will tell you what it is, you better read [*McKaskle* v.
*Wiggins*, 465 U.S. 168 (1984)]."

". . .

THE JUDGE: "I am going to tell you again . . . you are stand-by counsel,
you are not to take any active participation in this trial other than to ad-
vise him what he asks for, is that clear?"

STANDBY COUNSEL: "Yes, it's clear. I object to that, though, Judge."

". . .

THE JUDGE: "As stand-by counsel, it's is [*sic*] not your function. He is
the one who has to try this case himself, he is the one who is at the helm,
he must travel those perilous waters alone because he choose [*sic*] to do so.

tions prepared by counsel, to adopt jury instructions prepared by counsel, and to have counsel attend sidebar conferences. The defendant did not object to standby counsel's presence and did ask his advice on several occasions during the trial.

2. *Limitations on the role of standby counsel.* The defendant argues that the judge's restrictions on standby counsel's participation in the trial were an abuse of discretion that violated his right to a fair trial and to due process.[3] The argument is that, even when a defendant decides to represent himself, he has a constitutional right to some level of assistance from counsel. We disagree. Our reading of Federal law indicates that this is an area left to the broad discretion of the trial judge.

The Sixth Amendment to the United States Constitution guarantees defendants the right to counsel, see, e.g., *Gideon* v. *Wainwright,* 372 U.S. 335 (1963); it also guarantees the right to self-representation, see *Faretta* v. *California,* 422 U.S. 806 (1975).[4] There is no constitutional right, however, to "hybrid representation," that is, representation in part by counsel and in part by oneself. See, e.g., *McKaskle* v. *Wig-*

---

Of course you are a lawyer and you know when to object and when not to, but you are not to tell him that.

"This is his case, he reaches over to you and says, 'Gee, should I object to that?', then you may advise him. It's not your function to tell him when to object and not to object, and furthermore, it's not your function to write out motions for him because he may later say, that is not the motion I want. He is at the helm of his own ship."

[3]While the defendant bases his argument on both the Federal and the State Constitutions, we do not consider the State claim. As defense counsel conceded at oral argument, the State claim was not raised prior to this appeal. "An issue not fairly raised before the trial judge will not be considered for the first time on appeal." *Commonwealth* v. *Marchionda,* 385 Mass. 238, 242 (1982). This court generally will not consider arguments based on State constitutional grounds when those arguments have not been raised at trial and have not been argued separately from any Federal claim. See *Commonwealth* v. *Oakes,* 407 Mass. 92, 98 (1990).

[4]When a defendant waives counsel and exercises his *Faretta* right, a judge may appoint standby counsel "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta, supra* at 834-835 n.46.

*gins*, 465 U.S. 168, 183 (1984).[5] The defendant can either proceed pro se, or he can accept counsel; in the former situation, he waives his right to counsel, and, in the latter, he must submit to full participation by counsel. "A defendant does not have a constitutional right to choreograph special appearances by counsel." *Id.* Hybrid representation is not prohibited; appointment of counsel in any hybrid situation is left to the discretion of the trial judge. See, e.g., *United States* v. *Nivica*, 887 F.2d 1110, 1121 (1st Cir. 1989), cert. denied, 494 U.S. 1005 (1990).

The defendant raises the issue whether, under Federal law, there is a constitutional guarantee of a minimum level of

---

[5]The term "hybrid representation" encompasses two forms of attorney-client relationships. First, the attorney may act as cocounsel to the defendant: Both the attorney and the defendant may address the court, question witnesses, and join in the conduct of the trial. Second, the attorney acts in a purely advisory capacity, providing the defendant with advice on how to present the case, but not actually participating in the presentation of the case. Standby counsel usually falls in the latter category. See *Locks* v. *Sumner*, 703 F.2d 403, 407 (9th Cir.), cert. denied, 464 U.S. 933 (1983).

There is no Federal constitutional right to either form of hybrid representation. For cases holding that there is no Federal right to cocounsel, see, e.g., *Cross* v. *United States*, 893 F.2d 1287, 1291-1292 (11th Cir.), cert. denied, 111 S. Ct. 138 (1990); *United States* v. *Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989), cert. denied, 493 U.S. 1081 (1990); *United States* v. *Oakey*, 853 F.2d 551, 553 (7th Cir. 1988), cert. denied, 488 U.S. 1033 (1989); *United States v. Tarantino*, 846 F.2d 1384, 1420 (D.C. Cir.), cert. denied, 488 U.S. 867 (1988); *United States* v. *Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981); *United States* v. *Williams*, 534 F.2d 119, 123 (8th Cir.), cert. denied, 429 U.S. 894 (1976). For cases holding that there is no right to standby counsel, see, e.g., *Neal* v. *Texas*, 870 F.2d 312, 315-316 (5th Cir. 1989); *Locks, supra* at 407-408; *United States* v. *Gigax*, 605 F.2d 507, 517 (10th Cir. 1979).

Our cases interpreting Federal law seem in accord. "[T]he right to represent oneself and the right to counsel are available only in the 'disjunctive.' " *Commonwealth* v. *Tuitt*, 393 Mass. 801, 807 (1985), citing *United States* v. *Halbert, supra.* "A defendant who is permitted to conduct the whole or any part of his own defense in a criminal case does so in his individual capacity, is solely and individually responsible for his decision to do so and for the consequences resulting therefrom, and is not entitled to any title or designation of 'counsel' or 'co-counsel' in connection therewith." *Commonwealth* v. *Brown*, 378 Mass. 165, 176 (1979).

participation by standby counsel at trial.[6] "[I]f the district
[trial] court had discretion to deny hybrid representation
outright, it had discretion, in [assigning standby counsel], to
place reasonable limitations and conditions upon the arrange-
ment." *Nivica, supra* at 1121. Because the judge had discre-
tion to deny the defendant standby counsel, he also had the
discretion to appoint counsel with any reasonable limita-
tions.[7] The judge did not abuse his discretion, nor were the
defendant's constitutional rights violated.

We note that, while the judge had discretion to prohibit
unsolicited participation by standby counsel, he also had dis-
cretion to allow such participation.[8] See *McKaskle, supra* at
176. We are cognizant of the worth of the argument that
there is limited utility in assigning standby counsel who can
advise a defendant only when the defendant requests such
advice. Most defendants will not know what questions to ask
and will gain only a fraction of the advice that counsel could
offer. It may be appropriate, in the future, for a trial judge

---

[6]In *McKaskle, supra,* the United States Supreme Court considered the
upper limit on standby counsel's participation, that is, the point at which
the imposition of standby counsel interferes with the defendant's right to
self-representation. The Court held that appointment of standby counsel
does not violate the *Faretta* right so long as the defendant retains "actual
control" over his case and counsel's participation does not "destroy the
jury's perception that the defendant is representing himself." *McKaskle,
supra* at 178.

[7]We recognize that the *McKaskle* Court held that "both *Faretta*'s logic
and its citation of [*United States* v. *Dougherty,* 473 F.2d 1113, 1124-1126
(D.C. Cir. 1972)] indicate that no absolute bar on standby counsel's unso-
licited participation is appropriate or was intended." *McKaskle, supra* at
176. Our reading of *McKaskle* and the many Federal cases that have fol-
lowed it, see note 5, *supra,* leads us to conclude that the Court did not
intend to foreclose the possibility of strict limitations on standby counsel's
participation but rather intended to give the trial judges more discretion
than a "seen but not heard" rule would have allowed. *Id.* at 173.

[8]The defendant contends that the judge misunderstood the extent of his
discretion concerning the role of standby counsel, and that this mistake
requires a new trial. The defendant cites *Commonwealth* v. *Ruiz,* 400
Mass. 214 (1987), a case in which a judge did not exercise his discretion in
allowing impeachment by prior convictions. We discover nothing in the
record to sustain the defendant's claim. The judge manifested clearly his
awareness of his powers and of current law. *Ruiz* is inapposite.

who appoints standby counsel to allow such counsel to offer unsolicited advice to the defendant if the defendant so desires. Such advice will not violate the defendant's *Faretta* right, as the defendant will retain control over his or her defense, and the jury will see only the defendant presenting the case.[9]

3. *Sentencing considerations.* The defendant contends that the trial judge imposed a sentence based on improper considerations. During the trial the defendant was found twice in contempt, but the judge imposed no penalty on these findings. The sentence on the trafficking charge exceeded the Commonwealth's recommendation by three years. In imposing this sentence, the judge, in open court, referred to five prior convictions for distribution of controlled substances, as well as to other offenses of which the defendant had been convicted. The defendant appealed from the trafficking sentence to the Appellate Division of the Superior Court, G. L. c. 278, § 28A (1990 ed.), which upheld the sentence. Nevertheless, the defendant argues that the judge's "appearance of bias" violated his right to due process. Furthermore, the defendant asserts that, when the judge imposed a sentence three years longer than what the prosecution recommended, he was punishing him for contempt in violation of Mass. R. Crim. P. 43, 44, 378 Mass. 919, 920 (1979).[10]

Our review of criminal sentences is limited. See *Commonwealth* v. *Coleman*, 390 Mass. 797, 804 (1984). Under G. L. c. 278, §§ 28A-28C (1990 ed.), the Appellate Division of the Superior Court has the authority to review an otherwise lawful sentence. This was done, and the sentence was left undisturbed. This court will consider a sentence only to determine if it is illegal or unconstitutional. See, e.g., *Commonwealth* v. *Sanchez*, 405 Mass. 369, 379 n.7 (1989).

---

[9]Judges retain their discretion to prohibit standby counsel from speaking to the bench, the witnesses, or the jury. Judges also retain their discretion to appoint or not appoint standby counsel.

[10]No such objections were raised during the postverdict hearing on sentencing.

The defendant's sentence is neither illegal nor unconstitutional. The sentence falls within the range permitted by statute. See G. L. c. 94C, § 32E (*b*) (2) (1988 ed.); *Commonwealth* v. *Celeste*, 358 Mass. 307, 310 (1970). The record reveals that the judge relied primarily on the defendant's past convictions, a permissible consideration. See *Coleman*, *supra* at 805. We perceive no evidence of bias and no evidence that the judge was punishing the defendant for contempt.

*Judgment affirmed.*